# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SHAWN FEATHERS,<br><br>   Plaintiff,<br><br>   v.<br><br>MIRANDA, et al.,<br><br>   Defendants. | Case No. 1:15-cv-00090-DAD-SKO (PC)<br><br>**FINDINGS AND RECOMMENDATIONS ON DEFENDANT'S MOTION TO DISMISS**<br><br>**(Doc. 24)**<br><br>**TWENTY-ONE (21) DAY DEADLINE** |

## I. INTRODUCTION

Plaintiff, Mark Shawn Feathers, is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. On November 20, 2017, Defendant filed a motion to dismiss. (Doc. 24.) Plaintiff filed an opposition and Defendant filed a reply. (Docs. 30, 31.) The motion is deemed submitted. L.R. 230(*l*).

## II. LEGAL STANDARD

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure[1] 12(b)(6) tests the legal sufficiency of a claim. Dismissal is proper if there is a lack of a cognizable legal theory, or the absence of sufficient facts alleged under a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 1762 (2012). In

---

[1] The Federal Rules of Civil Procedure are hereinafter referred to as "Rule *."

1

resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006); *Schneider v. California Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

In limited circumstances, however, documents outside of the operative pleading may be considered without converting a motion to dismiss to a motion for summary judgment. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), *see also*, *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) (court may consider facts established by exhibits attached to the complaint), *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008) (judicial notice), *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987) (facts which may be judicially noticed), *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986) (matters of public record, including pleadings, orders, and other papers filed with the court). Under the doctrine of incorporation by reference, a court may consider a document that was not attached to the pleading if the plaintiff refers to the document extensively or if it forms the basis for plaintiff's claim. *Ritchie*, 342 F.3d at 908; *Daniels-Hall*, 629 F.3d at 998.

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept well-pled factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Daniels-Hall*, 629 F.3d at 998; *Sanders*, 504 F.3d at 910; *Huynh*, 465 F.3d at 996-97; *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000). Pleadings of prisoners proceeding *pro se* are liberally construed and any doubt is resolved in the inmate's favor. *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

///

Further, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216-17. "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible. The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'" *Id.* (emphasis in original). "Rule 8(a) '*does not impose a probability requirement at the pleading stage*; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' to support the allegations." *Id.*, quoting *Twombly*, 550 U.S. at 556 (emphasis added in *Starr*).

### III. FINDINGS

#### A. Defendant's Motion

Defendant contends that Plaintiff is not entitled to monetary relief under the Americans with Disabilities Act (ADA) because he cannot seek monetary damages against Defendant Sherman in his official capacity. Defendant also contends that Plaintiff cannot seek injunctive relief under the Americans with Disabilities Act and Rehabilitation Act (RA) because he was transferred from the prison where the alleged discrimination took place, thereby rendering the claims moot. Defendant avers that Plaintiff's injunctive relief claims are further mooted because Plaintiff is no longer housed at SATF and SATF has revised the caregiver position to allow inmates with TABE reading scores of less than 9.0 to become caregivers. Finally, to the extent Plaintiff can seek compensatory relief under the RA, Defendant contends Plaintiff fails to properly allege that he was otherwise qualified for the caregiver position. Thus, Defendant requests that Plaintiff's SAC be dismissed.

#### B. Plaintiff's Allegations

Plaintiff is classified as DD2 in the California Department of Corrections and Rehabilitation ("CDCR") Developmentally Disabled Program, which means he requires occasional prompts by correctional staff to perform or complete activities of daily living, such as showering or cleaning his housing unit. (Doc. 16, SAC, pp. 6, 15.) Aside from daily prompts,

Plaintiff's other adaptive supports include being provided more time to adjust to new routines and environments, being given extra coaching to learn new tasks, and being monitored for undue influence from other inmates because Plaintiff is at risk for being victimized by other inmates. (*Id.*)

Plaintiff's claims are based on his desire to become an ADA caregiver when he was housed at California Substance Abuse Treatment Facility and State Prison ("SATF"). (Doc. 16.) Specifically, Plaintiff initially asked his Unit Classification Committee ("UCC") to work in the caregiver Program on May 8, 2012. (*Id.*, p. 6.) At that time, Plaintiff had obtained his GED and his TABE reading score was 8.1. (*Id.*, pp. 29-30.) The UCC denied Plaintiff's request on the basis that he would not be able to complete all the job expectations of that position. (*Id.*, pp. 6, 28-30.) Plaintiff filed an inmate appeal on this issue in early 2013. (*Id.* 32-34.)

Plaintiff again requested assignment as a caregiver at his 2013 and 2014 UCC annual reviews, but was repeatedly denied. (*Id.* pp. 6-7, 36, 38-39.) Plaintiff filed a second inmate appeal on this issue which was granted in June of 2014. (*Id.*, pp. 7, 41-50.) It was not until a mid-year 2014 UCC program review, that Plaintiff's inmate appeal on this issue, which had been granted, was recognized and Plaintiff was placed on the caregiver waiting list. (*Id.*, 7, 61-62.) Despite having had normal examinations with his primary care provider in the two preceding months, Plaintiff was noted as "recently designated high risk medical" and the UCC elected to give Plaintiff a "non-Adverse transfer." (*Id.*) On February 4, 2015, Plaintiff was transferred to the California Medical Facility in Vacaville, California ("CMF-Vac"). (*Id.*)

**C. Analysis**

Plaintiff is proceeding against Defendant for violation of his rights under the ADA and the RA.

**1. Americans with Disabilities Act/Rehabilitation Act**

Title II of the ADA and § 504 of the RA prohibit discrimination based on disability. *Lovell v. Chandler,* 303 F.3d 1039, 1052 (9th Cir. 2002). The ADA applies only to public entities, whereas the RA proscribes discrimination in all federally-funded programs. *Id.* Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

Similarly, the RA provides:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....

29 U.S.C. § 794(a).

To establish a violation of Title II of the ADA, a plaintiff must show that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of a disability. *See Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.1997). To establish a violation of § 504 of the RA, a plaintiff must show that (1) he is handicapped within the meaning of the RA; (2) he is otherwise qualified for the benefit or services sought; (3) he was denied the benefit or services solely by reason of a handicap; and (4) the program providing the benefit or services receives federal financial assistance. *See id.*

At the pleading stage, Plaintiff's allegation that he was excluded from a job position for which he was otherwise qualified, solely because of his disability, was deemed sufficient to state cognizable claims under the ADA and the RA. However, as noted in the screening order, ADA and RA claims are brought against a public entity or the appropriate state official in his or her official capacity rather than against individuals in their personal capacities. *A.W. v. Jersey City Public Schools*, 486 F.3d 791, 804 (3d Cir. 2007); *Green v. City of New York*, 465 F.3d 65, 78-9 (2d Cir. 2006); *Garcia v. S.U.N.Y. Health Servs. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Abbott v. Rosenthal*, 2 F.Supp.3d 1139, 1144 (D. Idaho 2014); *Roundtree v. Adams*, No. 1:01-CV-06502 OWW LJO, 2005 WL 3284405, at *8 (E.D. Cal. Dec. 1, 2005). Thus, Plaintiff was permitted to proceed on ADA and RA claims solely against Stu Sherman, the Warden of

SATF, in his official capacity. (Docs. 17, 19.)

### 2. Defendant's Motion

#### a. Monetary Damages Under the ADA

Plaintiff seeks an unspecified amount of "damages" for the violation of his ADA rights against Defendant Sherman. (Doc. 16, SAC, p. 4.) Defendant seeks to prohibit Plaintiff from obtaining monetary damages in this action on his claims under the ADA. (Doc. 24, p. 6.)

As Defendant correctly notes, the *Ex Parte Young* doctrine bars claims for monetary relief against individuals sued in their official capacity. *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). Defendant also notes that punitive damages are not available on claims under the ADA and the RA. *Barnes v. Gorman*, 536 U.S. 181, 189-90 (2002). Plaintiff nonetheless contends he is entitled to monetary relief under the RA,[2] but presents no legal authority to establish that he may proceed against Warden Sherman, in his official capacity, for monetary damages under the ADA—and the Court finds none.

Compensatory damages are available against public entities under the ADA and the RA upon "a showing of discriminatory intent." *Ferguson v. City of Phoenix,* 157 F.3d 668, 674 (9th Cir. 1998); *see also Memmer v. Marin Cty. Courts,* 169 F.3d 630, 633 (9th Cir. 1999). The "deliberate indifference" standard is the requisite level of intent to support an award of compensatory damages against a public entity. *Duvall v. County of Kitsap,* 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139 (citing *City of Canton v. Harris,* 489 U.S. 378, 389 (1989)). The first element is satisfied when the public entity has notice that an accommodation is required. *Id.* The second element is satisfied if the entity's "failure to act [is] a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.* Under the second element, "a public entity does not 'act' by proffering just any accommodation: it must consider the particular individual's need when

---

[2] Defendant has cited authority which prohibits Plaintiff from receiving punitive damages under the ADA and the RA. However, Defendant has not moved to dismiss Plaintiff's claims for compensatory monetary damages under the RA. (*See* Doc. 24.)

6

conducting its investigation into what accommodations are reasonable." *Id.* (footnote omitted).

Categorical exclusion of disabled persons from public programs is "facial discrimination." *Lovell v. Chandler*, 303 F.3d 1039, 1057 (9th Cir. 2002). In such a case, the public entity is, at the very least, "deliberately indifferent"; by its very terms, facial discrimination is "intentional." *See Pandazides v. Va. Bd. of Ed.,* 13 F.3d 823, 830 n. 9 (4th Cir.1994) (because "intentional discrimination" was "synonymous with discrimination resulting in 'disparate treatment,' which contrasts with disparate impact," no greater proof of mental state was necessary) (citing *Guardians,* 463 U.S. at 584 n. 2 (opinion of White, J.)).

Plaintiff proceeds in this action solely against Defendant Sherman in his official capacity. (*See* Docs. 17, 19.) Thus, Plaintiff may only proceed against Defendant Sherman for injunctive relief under the ADA, and his claim for monetary damages against Warden Sherman, in his official capacity under the ADA, should be dismissed. However, Plaintiff should be granted leave to amend to show discriminatory intent and add claims for compensatory damages against CDCR and/or SATF.

### b. Plaintiff's Injunctive Relief Claims

Plaintiff's claims are based on alleged events which occurred when he was housed at SATF. (Doc. 16, SAC, pp. 4-7.) If Plaintiff were still housed at SATF, he would be allowed to proceed on his claims for injunctive relief. Although he was housed at SATF when this action was filed, (*see* Doc. 1), Plaintiff was subsequently transferred to CMF-Vac, (*see* Docs. 7, 11, 16), where he remains.[3] As Defendant correctly notes, Plaintiff seeks unspecified "injunctive relief" which presumably equates to Plaintiff's appointment in a caregiver position. (*See* Doc. 16, SAC, p. 4.) Although he was transferred to CMF-Vac before the SAC was filed (*compare* Docs. 7, 11 with Doc. 16), Plaintiff does not state any facts in the SAC to establish that the conditions which allegedly occurred at SATF are occurring at CMF-Vac. (*See* Doc. 16.) Nor are there any allegations in the SAC to show a reasonable expectation that Plaintiff will return to SATF. *Pride*

---

[3] This has been confirmed via the CDCR inmate locator at https://inmatelocator.cdcr.ca.gov/default.aspx. Judicial notice is taken of Plaintiff's whereabouts noted on the CDCR inmate locator as an undisputed matters of public record. Fed.Rules Evid.Rule 201, 28 U.S.C.A.; *Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (2012).

7

*v. Correa*, 719 F.3d 1130, 1138 (9th Cir. 2013).

Defendant's evidence also reveals that in December of 2016, the CDCR revised the ADA caregiver job. (Doc. 25, RJN, p. 24-28.)[4] According to the new policy, ADA caregivers are labeled as either "A" or "B" workers. (*Id.*) "A" workers must have a ninth-grade education equivalency. (*Id.*) "B" workers are eligible to perform physical tasks of caregiving that do not involve reading or writing and are not required to have a ninth-grade education. (*Id.*) According to this revised policy, if Plaintiff were to apply for a caregiver position, his GED may qualify him for either an "A" or "B" worker position. (*Id.*) Defendant therefore demonstrate that there is no realistic threat of repetition that Plaintiff will continue to be denied a caregiver position based on his educational equivalency. *City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983) (". . . the capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality.") As such, Plaintiff's injunctive relief claims under the ADA and the RA should be dismissed as moot.

Plaintiff contends that although he has requested a caregiver job at CMF-Vac, he has not been interviewed, given a job as a caregiver, or informed that a "ADA 'B'" position exists at CMF-Vac. (Doc. 30, pp. 4-5.) Plaintiff contends he still has not been placed in a caregiver job and should be allowed to pursue injunctive relief.

The pendency of this action does not give the Court jurisdiction over prison officials in general. *Summers v. Earth Island Institute*, 555 U.S. 488, 492-93 (2009); *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010). The Court's jurisdiction is limited to the parties in this action and to the cognizable legal claims upon which this action is proceeding. *Summers*, 555 U.S. at 492-93; *Mayfield*, 599 F.3d at 969. The Court cannot order CDCR personnel in general to engage in, or refrain from, specific acts. Because his claims are based on events that occurred at SATF, Plaintiff lacks standing to seek relief directed at remedying his current conditions of confinement at CMF-Vac. Additionally, to the extent his motion seeks relief to remedy past

---

[4] Judicial notice is likewise taken of the CDCR's memorandum to Associate Directors and Wardens of this revision.

conditions of confinement for the time he was at SATF, it was rendered moot upon his transfer to CMF-Vac. *See Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991). Thus, Plaintiff's request for injunctive relief based on events that occurred at SATF should be dismissed.[5]

### c. Exhaustion Regarding the May 8, 2012 UCC Hearing

Defendant acknowledges that issues pertaining to the exhaustion of administrative remedies should generally be raised in a motion for summary judgment. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). However, Defendant contends that this case presents a "rare event" where it is clear from the face of the complaint that Plaintiff did not exhaust administrative remedies for his allegations which are based on the May 8, 2012 UCC Hearing. (Doc. 24-1, pp. 7-9.)

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust available administrative remedies prior to filing suit. *Jones*, 549 U.S. at 211; *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Inmates must adhere to the "critical procedural rules" specific to CDCR's process. *Reyes v. Smith,* 810 F.3d 654, 567 (9th Cir. 2016). The exhaustion requirement applies to all suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532 (2002), regardless of the relief both sought by the prisoner and offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

"Under § 1997e(a), the exhaustion requirement hinges on the 'availability' of

---

[5] This action is simply not the proper vehicle for conveyance of any relief for Plaintiff at CMF-Vac. Nothing in this order should be construed as prohibiting Plaintiff from filing a new action on denial of a caregiver job at CMF-Vac. This Court makes no determination whether any such claims would be cognizable or whether Plaintiff properly exhausted the available administrative remedies.

administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1858 (June 6, 2016). An inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Id.* at 1858-59, citing *Booth v. Churner,* 532 U.S. 731, 738 (2001).

The California Department of Corrections and Rehabilitation ("CDCR") has a generally available administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners' welfare, Cal. Code Regs., tit. 15, § 3084, *et seq*. Compliance with section 1997e(a) requires California state prisoners to use that process to exhaust their claims. *Woodford v. Ngo*, 548 U.S. 81, 85-86, 126 S.Ct. 2378 (2006); *Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010).

As of 2011, a CDCR inmate initiates the grievance process by submitting a Form 602 called an inmate appeal ("IA"), describing "the problem and action requested." Cal. Code Regs., tit. 15, § 3084.2(a). An IA must be submitted within 30 calendar days of the event or decision being appealed, first knowledge of the action or decision being appealed, or receipt of an unsatisfactory departmental response to an appeal filed. Tit. 15 § 3084.8(b). The inmate is limited to raising one issue, or a related set of issues, per IA in the space provided on the first page of the IA form and one attached page (which must be on the prescribed Attachment form "602-A") in which the inmate shall state all facts known on that issue. Tit. 15 § 3084.2(a)(1),(2), & (4). All involved staff members are to be listed along with a description of their involvement in the issue. Tit. 15 § 3084.2(a)(3). Originals of supporting documents must be submitted with the IA; if they are not available, copies may be submitted with an explanation why the originals are not available, but are subject to verification at the discretion of the appeals coordinator. Tit. 15 § 3084.2(b). With limited exceptions, an inmate must initially submit his/her IA to the first-level. Tit. 15 § 3084.7. If dissatisfied with the first-level response, the inmate must submit the IA to the second-level within thirty days, and thereafter to the third-level. Tit. 15 § 3084.2, & .7. First and second-level appeals must be submitted to the appeals coordinator at the institution for processing. Tit. 15 § 3084.2(c). Third-level appeals must be mailed to the Appeals Chief via the

United States Postal Service.  Tit. 15 § 3084.2(d).

Defendant acknowledges that Plaintiff submitted Log No. SATF-F-13-00437 ("IA 00437"), protesting the May 8, 2012 Committee decision denying him a caregiver position, but contends that this appeal was not properly exhausted.  (Doc. 24-1, p. 8, citing Doc. 16, pp. 6, 32-33.)  The appeal was rejected for not attaching supporting documents necessary for the clarification and resolution of the appeal.  (*Id.* at 32; Cal. Code Regs., tit. 15, §§ 3084(h), 3084.3 (2012).)  Specifically, the appeals coordinator told Plaintiff that he needed to submit a CDCR Form 22, Request for Interview, Item, or Service, to the appropriate department.  (Doc. 16, p. 32.)  If Plaintiff did not receive an answer or was dissatisfied with the answer, Plaintiff was required to submit the Form 22 to a supervisor.  (*Id.*)  Once that process was complete, Plaintiff could re-submit the appeal with the attached and completed Form 22.  (*Id.*)  Plaintiff had thirty days to resubmit his appeal.  (*Id.* (citing Cal. Code Regs., tit. 15, §§ 3084.3, 3084.6(c)(4) (2012).)

Plaintiff initially complied by submitting a Form 22 to Counselor Miranda.  (Doc. 16, at 8, 36.)  According to Plaintiff's allegations in the SAC, however, Counselor Miranda responded "too late" for the appeal to be processed further.  (*Id.* at 8.)  Defendant contends that is incorrect.  While Plaintiff dated the form as delivered to staff on March 3, 2013, it is dated as received by staff on March 4, 2013.  (*Id.* at 36.)  Under Title 15, the first responder to an inmate's Form 22 must respond within three days of receipt.  Cal. Code Regs., tit. 15, § 3086(f)(4) (2012).  Counselor Miranda responded on March 7, 2013, which Defendant correctly contends was timely.  (Doc. 24-1, p. 8 (citing Doc. 16, p. 36).)

Defendant also correctly contends that Plaintiff did not submit the Form 22 to a supervisor as required by Title 15.  (Doc. 24-1, p. 9, citing Doc. 16, pp. 6, 36.)  If Plaintiff has done that, he would have received the supervisor's response within seven days.  Cal. Code Regs., tit. 15, § 3086(h) (2012).  Defendant then contends that Plaintiff could have re-submitted IA 00437 with the completed Form 22 for further processing.  Cal. Code Regs., tit. 15, §§ 3084(h), 3084.3(c) (2012).

As Defendant correctly notes, Plaintiff did not exhaust IA 00437 so as to be allowed to proceed on claims based on events that occurred during the May 8, 2010 UCC Hearing.  The

11

Form 22 process is not specifically addressed in the portions of Title 15 which pertain to inmate appeals (sections 3084 et seq). However, section 3084.3(c) provides that "[f]ailure to attach all necessary supporting documents may result in the appeal being rejected . . . " and "[t]he appeals coordinator shall inform the inmate or parolee that the appeal is rejected because necessary supporting documents are missing. The appellant shall be allowed an additional 30 calendar days to secure any missing supporting documents and resubmit the appeal." The Form 22 process specifically states that an inmate appeal "may be rejected by the appeals coordinator or designee with instructions to complete the request form [22] process before resubmitting the appeal." Cal. Code Regs., tit. 15, § 3086(e)(2) (2012).

This is apparently what occurred with IA 00437. It was initially rejected because it did not contain all necessary supporting documents and Plaintiff was directed to use the Form 22 process and resubmit IA 00437 with the results of the Form 22 process attached. (Doc. 16, SAC, p. 36.) Plaintiff initiated the Form 22 process, but did not apparently pursue it through Supervisor Review as required. (*Id.*) The SAC reveals that Plaintiff did not complete the Form 22 process and thus did not abide by the appeals coordinators' instructions on how to perfect IA 00437.

Plaintiff points to his efforts exhausting a different inmate appeal which he filed on March 30, 2014 -- nearly two years *after* the May 8, 2012 Committee meeting -- Log No. SATF-F-14-01693 ("IA 01693"). (Doc. 30, pp. 5, 32-49.) Plaintiff provides no legal authority, however, to support his contention that IA 01693 sufficed to exhaust allegations for a claim which occurred two years prior to its filing—and the Court finds none.

Because Plaintiff did not properly exhaust IA 00437, Defendant contends Plaintiff's claims regarding the May 8, 2012 UCC meeting should be dismissed without leave to amend. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust," a defendant is entitled to dismissal. *Williams v. Paramo*, 775 F.3d 1182, 1166 (9th Cir. 2015). The claim should, however, be dismissed without prejudice. *Jones*, 549 U.S. at 223-24; *Lira v. Herrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005). Here, Plaintiff's failure to exhaust IA 00473 is apparent on the face of the SAC. Thus, dismissal of his claim with leave to amend based on the May 8, 2012 UCC hearing is appropriate in light of *Jones* and *Lira*, and because this issue

12

1  has been addressed under Rule 12(b), rather than Rule 56, in accordance with the allegations in
2  the SAC and the attachments thereto.

### d. Plaintiff's Claim Under the Rehabilitation Act ("RA")

Defendant contends that the SAC does not state a cognizable claim under the RA. (Doc. 24-1, pp. 9-10.) Under Section 504 of the Rehabilitation Act, Plaintiff must show: (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

Under the second and third *Duvall* factors, Plaintiff must show that he was "otherwise qualified" to meet the caregiver position's requirements despite his disability but was denied *because of* his disability. *Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979); *Duvall*, 260 F.3d at 1135. The only caregiver position requirements Plaintiff did not have to satisfy were those that were unreasonable and discriminatory. *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1205 (9th Cir. 1984).

Defendant contends that the caregiver position required a minimum TABE reading score of 9.0. (Doc. 24-1, p. 10, (citing RJN Ex. B).) Plaintiff's score was 8.1. (*Id.*, (citing RJN Ex. C; SAC p. 4).) Defendant contends that Plaintiff was repeatedly told that he needed a higher TABE score to become a caregiver and that he could retake the TABE for a higher score. (*Id.*, (citing SAC 47-49, 52-53).) Defendant contends Plaintiff was not "otherwise qualified" to become a caregiver or be placed on the list because he "never retook the TABE." (*Id.*, (citing SAC p. 47).) Defendant's contention lacks merit.

First, the CDCR's Operational Procedure Manual ("OPM") and its contents are items of undisputed matter of public record which may be judicially noticed. Fed. Rules Evid. 201. Thus, Defendant's contention that the caregiver position requires a minimum TABE reading score of 9.0, as reflected in the OPM, is sound. (*See* Doc. 25, RJN, Ex. B, p. 11.) However, judicial notice may not be taken of Plaintiff's January 5, 2012 General Chrono on which Defendant relies to establish Plaintiff's TABE reading score at 8.1. (*See id.*, Ex. C, p. 16.) Plaintiff's General Chrono is not an undisputed matter of public record. In fact, Plaintiff's allegations in the SAC

13

1 | fully dispute the weight of this document in denying him eligibility for a caregiver position
2 | because he had obtained a GED. (Doc. 16, SAC, pp. 6-7.) This Court may not take judicial
3 | notice of Plaintiff's General Chrono because Plaintiff's intelligence level when he was denied
4 | eligibility for a caregiver's job—whether quantified by the 8.1 TABE score on the General
5 | Chrono or Plaintiff's GED—is "subject to reasonable dispute." Fed.R.Evid. 201(b). *See also Lee*
6 | *v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) (holding that district court did more
7 | than take judicial notice of undisputed matters of public record when it took judicial notice of
8 | disputed facts stated in public records by relying on the validity of a Plaintiff's Waiver of
9 | Extradition in dismissing plaintiffs' § 1983 claim in a motion to dismiss and failed to draw all
10 | reasonable inferences from the plaintiffs' allegations).

Here, the parties present alternative explanations: Defendant contends that Plaintiff's TABE score properly prevailed to deny his eligibility for a caregiver job, while Plaintiff alleges that his possession of a GED should have been sufficient to grant him eligibility. The Court finds both parties' explanations plausible such that Plaintiff's RA claim in the SAC survives Defendant's motion to dismiss under Rule 12(b)(6). *Starr*, 652 F.3d at 1216-17.

Defendant contends that the exhibits to the SAC demonstrate that Plaintiff "never retook the TABE." Defendant specifically cites to page 47 of the exhibits to the SAC. The "Summary" on this document simply reflects that B. Peterson, CCII, interviewed Plaintiff, and "advised [Plaintiff] how to retake [his] TABE test in an attempt to improve [his] GPL and informed [him] that if [he] did this[,] UCC would review [his] case for the possible placement on the ACG waiting list." (Doc. 16, SAC, p. 47.) Thus, this document reveals that Plaintiff was instructed on how to retake the test to obtain a higher TABE score—not that Plaintiff "never retook the TABE" as Defendant contends.

Finally, Defendant fails to cite any authority to support his contention that "Plaintiff's ineligibility for the caregiver position was determined because of Plaintiff's TABE reading score, not his status in the Developmentally Disabled Program" (Doc. 24-1, p. 10), and the Court finds none.

//

Drawing all reasonable inferences in favor of Plaintiff as the non-moving party, *Daniels-Hall*, 629 F.3d at 998; *Sanders*, 504 F.3d at 910; *Huynh*, 465 F.3d at 996-97; *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000), and liberally construing Plaintiff's pleadings, resolving any doubt in Plaintiff's favor, *Wilhelm*, 680 F.3d at 1121; *Watison*, 668 F.3d at 1112; *Silva*, 658 F.3d at 1101; *Hebbe*, 627 F.3d at 342, the Court finds that Plaintiff's claim under the Rehabilitation Act is cognizable. Defendant's motion to dismiss on this issue should be denied.

## IV. **RECOMMENDATION**

Based on the foregoing, the Court HEREBY RECOMMENDS that Defendant's motion to dismiss, filed on November 20, 2017 (Doc. 24), be ruled on as follows:

1. Plaintiff may only proceed against Defendant Sherman for injunctive relief under the ADA. Plaintiff's claim for monetary damages against Warden Sherman in his official capacity under the ADA should be dismissed. Plaintiff should be granted leave to amend to show discriminatory intent and add claims for compensatory damages against CDCR and/or SATF;

2. Plaintiff's injunctive relief claims under the ADA and the RA are moot and should be dismissed;

3. Plaintiff's request for injunctive relief based on events that occurred at SATF should be dismissed;

4. Plaintiff did not exhaust available administrative remedies regarding the events of the May 8, 2012 UCC Hearing, and any claims based thereon should be dismissed with leave to amend; and

5. Defendant's motion to dismiss Plaintiff's claim under the RA for failure to state a cognizable claim should be denied.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file

objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 27, 2018**                    /s/ *Sheila K. Oberto*
                                            UNITED STATES MAGISTRATE JUDGE